The Honorable Judge of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw not and give their attention, for the court is now sitting. The Honorable Judge of the United States Court of Appeals for the Fourth Circuit. And I would like to start off if I could. The first question is whether the document called the Internet Benefits at a Glance, otherwise known as an IBAG, whether that particular source of plan information is an expressed part of the SPD, the Summary Plan Description of Michelin. Our contention is if it is, then the ruling of the lower court and also the decision of the plan administrator of Michelin completely violated the expressed terms of that document. And that in itself would be an abuse of discretion. It essentially rewrote the terms of the plan if that is part of the plan document. In this case, we submit it is. Granted, the IBAG is not, of course, contained within the four corners of the SPD, but it is specifically referenced expressly, emphatically in the document. It starts off the SPD on page one, which is on page 39 of the Joint Appendix. And the SPD starts off in bold, first line in the SPD. It says, who do I call? Where do I look? Bold font, large. And if you go to that section, it has down there for the medical plan, call UnitedHealthcare, and then it references out to the side, also go to their website. And it gives the website myuhc.com. When a plan participant goes to that, they pull up, once they log in, they pull up the internet benefits at a glance, and they get a large database of terms that they have interpreting the plan. Part of it, when you pull up, you go to the section on injections and physician services. It then expressly states, injections, 100 percent of eligible expenses are covered. There is no exception to it. No qualifications limited. It does have a little bit later, it says allergies also included, allergy shots. But there is no exception to it. And that is a document that they, that UnitedHealthcare has on their website. Of course, that Michelin points the average plan participant to go to, urges them to go to that. And there is no point that they disavow that as part of their plan document. So with that in mind, with a statement saying injections covered 100 percent, we then get to the claim that Mr. Hooper made. Your position is injection means every kind of injection, no matter how involved, how long the needle, how much anesthesia is required. If it is an injection through a needle, they are all the same. Correct. There is no exception to it. It doesn't say, it doesn't limit it to non-surgical injections covered 100 percent or anything about surgical injections. There is no distinction in there. And that is consistent with other parts of the plan. For instance, you go to the section there about temporomandibular joint injections, which understands injections to the jaw area. And in there, the plan, consistent with the IBAG, states non-surgical treatments include trigger point injections, and again, that is consistent with the IBAG. I think what is very important about that is if you go to the trigger point injections in the CPT manual, the current procedural terminology manual, which is what the plan administrator relied on, it also is in the, it is called the surgery section of the CPT manual, along with the codes that Dr. Cass has used. And there is no distinction made in any way to say why the temporomandibular joint injection is non-surgical, which is an injection to the head area, and an injection to the knee that is on the same coding page as the ones that Mrs. Hooper received, why one should be surgical and one should be non-surgical. Well, why, what is your rationale that this thing ought to be considered a contract between Michelin and Hooper? Well, that, of course, is the plan document. That is what they put out. There is no full plan document. The SPD itself is the plan. There is no other source of information, no other contract. And so the SPD is what the plan participants have to go by. And, of course, that expressly incorporates the IBAG. And so those are the documents that form the agreement, the relationship between Michelin and its appeals board, the plan, and plan participants. And critically, of course, as with an SPD, as it should be, what is written in there is to be understood by the average plan participant. And the information is supposed to be readily understandable by them. And, of course, they put the IBAG out there, which is very clear, very precise, that any average plan participant can understand injections covered 100 percent of that. One other point to make on that, just with a rebuttal from the other side, has been, well, that's a statement of UnitedHealthcare. Michelin didn't state that. They put that out there. But, of course, UnitedHealthcare was retained and hired by Michelin to be their claims administrator, to put that information out there. And it's an express, or in this case, obviously, apparent authority, because they were telling participants to rely on UnitedHealthcare to look at their information. And that is, obviously, an apparent authority, if not an express authority, that UnitedHealthcare has authority to speak for Michelin in that regard. So are you arguing that the administrator and or the appeals board is essentially a stop because of the language of the at-a-glance website from claiming otherwise, no matter what other documents might say as to whether this particular form of therapy is surgery or something else? In this case, yes, because there is no document that contradicts that. Well, I mean, the CPT contradicts it, but, of course, your client didn't have access to that. So absent that, I mean, if this had just been a battle between a decision by the administrator to pick the CPT as opposed to the website page that your client might not have had access to, given the deferential standard of review, I suppose the other side would win. But as I understand your argument, your client didn't have access to the codebook, at least not directly. He or she was entitled to rely on what was on the website. In the absence of that, and no matter what the codebook says, they're responsible for what appears on that website. They ought to be held to it. Correct. The plan itself does not describe how injections are to be handled. And so, therefore, that's why they have a reference to the IBAG to go to get that source of information. And that's, therefore, expressly put out there for them. The CPT reference, one thing, it comes in a different section of the plan, which Mr. Hooper was not involved in, called the basic care requirements. There are, I think, six different plan options a person can elect to get in. Mr. Hooper elected to be in it. It's called the network-only plan. The CPT reference occurs in another section of the book, the SPD, called the basic care requirements. So that's not a section he would go to to look for it. But even so, as you stated, the CPT manual is a long 770-page catalog of various medical procedures. It's a copyrighted document. It's not something a plan participant can go pull up on the Internet and read it and try to figure out for themselves how it's going to be treated. And, of course, the plan itself has ignored the CPT designation or the chapter heading in dealing with other injections such as the TMJ injections. And that brings it to one other point I want to bring out. The coding in this that was used, two codes in particular, 20550 and 20610, as referenced, that Dr. Cassis, the treating physician, used to submit to the insurance company and then eventually to Michelin, the code description itself never mentions the word surgery. It's not in there. Even if you did go look up the code on the Internet, you're not going to see the word surgery. The first time surgery appears is when UnitedHealthcare issues the EOB. Then the word surgery pops up. That's the first time Mr. Hooper saw it. Never had any idea his wife was going in to have four surgeries on one day, when she got four steroid injections. So that's a point that the defendants try to raise and say Dr. Cassis chose this as a surgery. No, he chose the individual codes. It never defined and includes surgery. Surgery happens to be a chapter heading, which of course Mr. Hooper had no way to know what a chapter heading is in the CPT manual. Go ahead. What's your argument about the timeliness of presenting the district court with those two pieces of evidence had the review boards below had that information, the decision might have been different. But weren't you too late at the district court level? Well, the eye bag, of course, that's something obviously UnitedHealthcare and Michelin both have access to. It's something within their control. I believe in the case of Helton versus AT&T, this court stated that if it's a document that the plan administrator or the fiduciary has themselves, that can be looked at and considered by the court. In this case, they obviously had access to the eye bag. The other document the court pointed out and excluded when it was the 2009 claim that Mr. Hooper presented, his wife had the shots in 2009, exact same shots. They were initially denied by UnitedHealthcare, I mean not denied, but they were paid 80% by UnitedHealthcare, denied 100%. After he appealed to them, they then changed their ruling and went back and paid it 100%. The court held that out saying he didn't present that to the board. Our position is they had that information. UnitedHealthcare is their agent. Well, what's the evidence to support that? Well, twofold. One is they had the right, Michelin did, to be the one to hire UnitedHealthcare. Earlier in 2008 is how this kind of started. Blue Cross Blue Shield was the plan administrator. Michelin then removed Blue Cross Blue Shield and brought in United. That's when the difference in the treatment started because in 2008, Blue Cross Blue Shield paid 100%. There's an EOB in the record up there on page 706 where they paid 100%. But then when UnitedHealthcare stepped in, that was a decision by Michelin to bring in UnitedHealthcare as their agent. Also, nobody can test that the funds used to pay these claims are paid by Michelin, not out of United's funds. So all this is coming ultimately in the direction of Michelin.  The plan itself directs the participant to rely on UnitedHealthcare's statements in regard to the terms of the plan and the benefits under it. So therefore, these statements are within the express authority, the express representation of what UnitedHealthcare's agency relationship is. Is it your position that epidural qualifies as an injection, a shot? You know what epidural is? Oh, yes. Oh, yes. My wife does. That's right. That's how I know too. Is it your position that epidural is the same thing as a shot? That epidural should be qualified as an injection? If it's simply an injection of the substance into the spine or whatever area, then it would be. It would be an injection. It makes no difference whether a nurse is authorized to do it or forbidden to do it, for example. For example, a nurse can give a fetish shot. A nurse can't give an epidural. Right. You don't see any reasonable basis for differentiating between those two. No. If they wanted to do that, they could have done that in the eye bag. They could have made some exception to say these particular type of injections were an injection that can only be administered by a doctor or something like that. They could have made that exception in there. They did not do that. That's within their control to make that exception. It's not theirs. I would say, no, in this case it would have been treated as a non-surgical procedure. Does the eye bag, I mean, typically these documents that are summary descriptions of the plan have all sorts of disclaimers that say this is not intended to be a fully complete representation of your benefits. Please see the full plan, et cetera, something like that. Was there that kind of disclaimer here? Yes, there was that in there. I believe it's around page 40, 41 of the record. There is a disclaimer saying there may be more complete details and other documents to look at. Now, there is no formal plan, health plan in a sense that you have in a pension plan, a formal plan than an SPD. In this case, it's just the SPD by itself. And then the SPD references that there are other more detailed sources of information. And then, of course, you go to page one of the SPD and it says go to the UnitedHealthcare website. And that gives you more detailed information. If you look at, for instance, on the eye bag page that's printed out around 1017 of the record, you'll see on there it says page 22 of 79. That's just on the physician services. So it's a very detailed listing of 79 pages of how physician services are covered. Then you have another eye bag about other types of services. So there's a lot of information in there. It's very detailed. And that's what the plan participant is directed to go look at. Before we sit down, did the surgeon in this case have an opportunity or an option to code this particular procedure differently if he wanted to avoid the surgical nomenclature attached to it? No, he would not have the option. That's the only coding out there. To code it otherwise would have been basically kind of a fraud on the insurance company. There is an option the first time he sees a patient. On an initial evaluation, you can code it something differently. But the CPT manual says that only applies to first-time visits, first-time procedures. This was not her first time, so he had no other option than to code it as he did. Okay. Thank you, Mr. Hogan. You've got some time remaining after we hear from the attendants. Mr. Daugherty? May it please the Court, I'm Vance Daugherty, and I represent the Michelin Medical Care and Prescription Drug Plan as well as the Pension and Benefits Board. To start off with, I think the overarching issue to keep in mind here is the standard of review. This is an abuse of discretion standard of review. And the question there is whether the appeals board, the entity that handled the appeal, the second level appeal, whether its decision was reasonable. What does that mean? It means, it doesn't mean, I'll phrase it this way, it doesn't mean that their interpretation of the word surgery as applied to these injections procedures was maybe the best interpretation or indeed the interpretation that a court would come to independently. The question is whether it was reasonable. And, of course, Michelin's position is it was reasonable because, as Judge Hendrick said in the district court, the evidence in the record, what was known to the plan administrator, the claims administrator, the appeals board at the time it made its decision were the CPT codes. That's what was in the record. And based upon that, as Judge Hendrick said, that was in fact the most reasonable basis for this decision is to look to the CPT codes. I think that's probably not an unreasonable view of things, but the problem here is you have this website that suggests to the plan participant something entirely different. And as I understand the argument, it's not that in a vacuum that interpretation was unreasonable. It's that your client misled this participant to some other conclusion. Yes, Your Honor, and I hear that. Let me address the IBAG since that is a point here. First of all, the SPD references a website. It references a website. It doesn't ever mention an IBAG. There's no explicit incorporation of the UnitedHealthcare website or the IBAG in the plan document. So, number one, there's no express incorporation of that into the summary plan description. But let's set that aside for a minute. Let's look at the IBAG and what the IBAG says, and it's in the record. Now, the IBAG doesn't define surgery. It doesn't define injections. It references injections, but it doesn't define them. But as Judge Hendricks noted in the district court below, the IBAG is consistent with the interpretation applied by the appeals board. Yes, the IBAG notes injections 100% of eligible expenses, but it also says professional fees performed in surgery and office paid at 80% of eligible expense. So the IBAG position is that IBAG is completely consistent with the appeals board interpretation. But how would a layperson understand all of that? Well, I think that a layperson, and specifically here, you know, there was no question. I'll answer it this way, Judge Diaz. I think that here in this circumstance, there was no question in the record, in this case, that from the very beginning that it was clear to Mr. Hooper and Ms. Hooper that the issue was that these injections were being coded as surgery. And that... Why was it clear? Well, because it said these injections were properly determined to be surgery and paid at 80% of the cost of the surgery itself. You mean after the fact? Well, it was during the claims process, not after. I mean, yeah, after she got these injections. Yeah, but the question is someone who's not a medical professional that wants to make a rational decision as to whether or not to undertake a procedure, if he or she thinks it's covered at 100%, that's an easy call. If it's only 80%, well, they might make a different decision. Well, it might. I would say that's between the physician and the participant. I mean, the physician is the entity or the individual who is charged with choosing these codes. I mean, you know, he or she is the person there who observes what's going on, who is actually doing whatever it is that's being done and choosing the codes. As I understand it in this case, and of course this evidence wasn't properly before the board, the doctor has a different view of things. He says this is ridiculous, this is not surgery. Well, he does, but that didn't make its way into the... I understand that, but I guess what I'm saying is that that seems entirely consistent with how a layperson would view this if looking at it at the very beginning of the process. Well, perhaps, but I mean, I think, you know, again, under the standard of review, it's the question of, you know, what was known to the appeals board and was that reasonable? Was it a reasonable interpretation in light of the CPT codes? Now, the CPT codes have been around since, I don't know, the late 60s, whenever Medicare came in. I mean, that's the industry standard in the medical profession. It strikes me that the appellate's agency argument is the way he's trying to impute knowledge. Can you talk a little bit about why agency does not apply in this case? Yes, sir, I'll be glad to talk about that. First of all, agency was never pled in the pleadings. There was never any allegation of agency pled. It was never briefed below. There was no factual development of agency. Frankly, it boils down to the plaintiff saying UHC is an agent of Michelin, and because we say it enough times, it's true. There is no evidence. There was no contract. There's no contractual evidence that Michelin made UnitedHealthcare its agent within the meaning of agency in the law. UnitedHealthcare was a third-party administrator hired to handle initial claims and first-level review. So to say that somehow that it was its agent just because we say it enough times, it becomes true. There's no legal or evidentiary support that it was an agent. And, you know, Mr. Hogan mentioned Helton, and, of course, Helton does say that information known to the administrator or its employees acting in the scope of their employment or in the books and papers of the administrator may be imputed to the administrator. But we don't have that here. UnitedHealthcare is not a co-employee with Michelin, and there's no evidence whatsoever that any employee of Michelin acting in the scope of his or her employment knew anything about the 2009 claim, knew nothing about it. There's absolutely not a shred of evidence. And so I think to take the plaintiff's position and extend Helton to create an agency relationship here creates a host of problems. I mean, for example, where does one draw the line here if you're trying to impute knowledge of a third-party administrator where there's no evidence of agency, there's no contractual agency relationship created? Where do you draw the line? I mean, how far back do you go? Do you go back to UnitedHealthcare? Do you go back to Blue Cross Blue Shield? Do you go back to whomever was before that? And how far do you take it into the future? And the problem there becomes claims processing. How do you have a system, as this Court has recognized, a claims processing system that's efficient, that's inexpensive, and that's timely? The problem there would be you wouldn't. Ultimately, if you took it to its extreme, if UnitedHealthcare were found to be the agent of Michelin under these circumstances, Michelin would have to bring that in-house more likely than not and have to hire a host of people to process claims with the knowledge and expertise to do that. So I think the overarching point there, Judge Floyd, is there's not a shred of evidence here that UnitedHealthcare was an agent of Michelin. The cases cited by the plaintiff where they discuss agency refer to actual affirmative representations or misrepresentations, again, by employees of the fiduciary, the claims administrator. So this Court has not extended the law that far. I think the law in this circuit now is Helton, and to extend it any further than Helton, I think, would create the problems that I've tried to articulate. And, you know, Judge Floyd, one other point I noticed is when you're questioning Mr. Hogan, you were saying, well, is it too late? And again, Mr. Hooper certainly had the opportunity. He was given the opportunity, three different occasions, given the opportunity to submit information to support the position or his position that these are rejections, these are not surgery. And for whatever reason, he didn't. I mean, there's no evidence that this information was not available or could have been available to him back in 2010 and early 2011 when the claims process was ongoing. Just for whatever reason, he just chose not to do that. And so, therefore, the appeals board was left with the CPT codes as the basis to make the decision. And, you know, also, again, on those 2009 claims, as I said, the Michelin had nothing to do with those, the appeals board never considered them, so there was never a prior decision by the appeals board, no exercise of discretion by the appeals board with respect to those earlier 2009 claims. And, you know, as we wrote in our brief, we don't know why there was a reversal. So, you know, there's a lot of unknowns about that, separate and apart from the agency argument. So, with that, the Michelin contends that it was reasonable. It was not an abuse of its discretion or the appeals board discretion to decide the claim based upon the CPT codes to conclude that surgery, to conclude that the injection procedures were surgery within the meaning of that term. Let me ask you about the iBag website. Was any confusion ever expressed during the claim process by the plaintiffs that they were misled by the term injection at that website? No, sir. It was never raised in the appeal process? Never raised. Okay. And are there any disclaimers that your company has with regard to that website that, as Judge Diaz mentioned, that would alert a person taking a look at it, everything is not literal? Well, the SPD, recalling from memory, does have a statement that says that this summary plan description may not contain all plan terms. There may be other documents in addition to the summary plan description, but let me make a point about that. The SPD here was an SPD for multiple benefit plans, and so there were other plans that, you know, outside of the SPD, like, for example, retirement plans. The SPD does address retirement plans, but the SPD was both the summary and the descriptive document for the medical plan. But there are disclaimers. Do they go specifically to the website? I don't remember that. I don't think they do, but I can't speak to that from memory. But there certainly is no explicit incorporation of that website into the plan. I think we understand your position. Okay. Thank you, Judge. I'm going to sit down and let Mr. Hooper, I mean, Mr. Campbell speak. Thank you, Mr. Campbell. May it please the Court. My name is Don Campbell. I represent UnitedHealthcare. I'm here primarily to focus on the issue of waiver that we raised in our brief, as it affects the appeal and the claims that were summarily dismissed against United. Summary dismissal of the four counts alleged against United has to be affirmed for three reasons. The three reasons are, one, that I know Justice Traxler is familiar with from the IIF data solutions case, that there was no mention in the appeal of the first brief, the opening brief by plans, appealing the finding that the Court had that pursuant to the Givens v. American Benefit Corp. case, that as a third-party administrator of a self-funded plan, United was not a fiduciary and was not subject to a risk of liability for any of the four claims that were asserted by Hooper against United. Secondly, Hooper also did not challenge and in fact concedes the District Court's finding that United was not a plan administrator, nor was United the insurer of the plan, which were the only bases for liability alleged by Hooper on the non-fiduciary claims in the complaint. And third, Hooper does not challenge at all the District Court's finding of an absence of any evidence against United, as well as Michelin frankly, that they failed to give any evidence of a full and fair review or failed to follow plan or statutory procedures or breached any fiduciary duties. So for those three reasons, the issue of waiver under Powell and data solutions offered by Justice Traxler for the party failing to raise those issues in the opening brief and to challenge those, there are no viable claims that would remain to be reversed or remanded as to United. There are no issues on appeal that would allow for any claim to be remanded or reversed as to United. The first issue I mentioned in more detail, as the panel is aware, the District Court specifically reviewed this and found that the Givens holding, Givens v. American Benefit Corp., was squarely on point with this case as far as United was concerned. United was only hired as a third party administrator to do initial reviews of claims, does not pay those claims and does not have any final authority on the decision of those claims. Accordingly, Givens was squarely on point and all of the claims were dismissed against United. But even if you break down to my second point, even if you break down those claims on an individual basis and look at the individual claims, not as broadly as just the dismissal under Givens, they also should be dismissed and were not appealed here. In order to appeal them, plaintiff would have had to appeal the decision that United was not the plan administrator or they would have had to appeal the decision that United was, in fact, an insurer over these. Because if we look at the remaining counts asserted against United, count one is a failure to comply with the plan terms. The basis of liability for that A1B benefits claim is that United is the plan administrator and the insurer and had to pay those benefits. Well, it was found exactly the opposite and, in fact, plaintiff concedes those things in its brief and does not challenge those at all on appeal. Likewise, for count three, the full and fair review also requires, is based on United being the plan administrator having to provide that review. Again, we know that the court found that United was not the plan administrator and that issue was also not raised on appeal. Finally, on count four, the ERISA claims procedures, it's the A3 equitable relief claim. Again, it's premised upon United being an insurer and failing to follow the procedures. As I stated, that was found expressly not to be the case and, in fact, plaintiff concedes that. When we go through the four counts that are expressed against United, they are either premised on fiduciary responsibility, which the court found was not the case and that was not challenged, or they're premised upon United being an insurer or plan administrator, which the court also found was not the case. The fact remains in this that United was not the proper party to this case. It was summarily dismissed because it was a third-party administrator that did an initial review and, as such, there's no liability. So I respectfully request that the summary dismissal be affirmed as to United. Thank you, Mr. Campbell. Thank you, Mr. Hogan. Briefly, to respond to Mr. Campbell's arguments, we did concede in our reply brief near the end that there was no fiduciary relationship with United. So that would address counts two, three, and four against United, and so I don't have a disagreement on that part. That just leaves the remaining count one, which is the 502A1B claim against United for the decision they made, and that, again, would come back expressly at United's feet. Blue Cross Blue Shield was the prior administrator. They pay the claims 100 percent. Then when United stepped in, that's when the change began. They're the ones that started directing the change to only 80 percent coverage. So that's where their responsibility comes in on that claim. But the other remaining counts, we did concede that those are not proper against United at this point. In response briefly to Mr. Trouty's arguments, he alluded to that this Court, if it expands the agency relationship past employees, that it's open-ended, there's no end to it. I would disagree with that. It would need to be an express representation, something that's clear, manifest representation, that this other entity is acting on our behalf. In this case, we have that. It's emphatic in the SPD. Go to United Health Care to learn about the benefit terms of our plan on page one, the very first item. So here there's no question about the representation. That is a limit. Keep it from just being open-ended and everybody coming in saying this other person is an agent. So I think that addresses the agency questions before us. Let me ask you a question before you run out of time. I'm trying to make sure I understand your eyebag argument. Your position is it should have been considered when the decision was being made by the Board as to whether or not to pay this full amount. That it's not in and of itself determinative of the question. It's something that should have been considered and that the relief you want is for us to send it back for them to add that into the equation when they make their final decision. Well, I will submit that actually it is expressly part of the plan term. It's unambiguous. I know what you said. I'm looking at your brief. It says the eyebag term should have been considered when determining abuse of discretion. That's what you say it should have been. So it seems to me what you're asking for us to do is if we feel like it's a relevant consideration, to send it back to the Board to add that into the equation when they make their decision. Well, I believe the argument is twofold. One is we think it's an express term of the plan. Therefore, this Court should order that it be followed. But even if the Court did not consider it an express term of the plan, but as a source to be reviewed under the Booth factors, Booth versus Walmart, then in that case it should be considered. Our first argument is... I see. That's the secondary argument. Secondary argument. It is an express term of the plan and it's unambiguous. It says 100%. The other point to respond to is about the information that was looked at. The District Court stated no question that the eyebag was not looked at by Michelin or by UnitedHealthcare. On page 579 of the record, Michelin asked UnitedHealthcare for their information that they had. But what they asked for was only one thing. Give us the explanation of the codes. They didn't ask for the eyebag or any other or whether there had been any prior claims by this claimant on this particular type of procedure. They just wanted to know the codes. So it was just a rote application of the CPT codes to this case, which we believe, of course, is improper, especially given that the CPT codes, the purpose of them is a system of nomenclature, it's not a classification system where the chapter headings control anything within the chapter. The CPT editorial panel specifically stated that in their articles, explaining how the CPT codes should be used, that it should not be relied on broadly for billing purposes, and so it would be improper even if you were to consider whether the CPT codes should be used in an abuse of discretion standard. So that said, I'll answer any other questions the Court has. I think so. Thank you. All right. Thank you. Thank you, Mr. Togan. We'll come down and greet counsel and then go into our next case.
judges: William B. Traxler Jr., Albert Diaz, Henry F. Floyd